STUART F. DELERY
Deputy Assistant Attorney General
RUPA BHATTACHARYYA
Director, Torts Branch, Civil Division
MARY HAMPTON MASON
Senior Trial Counsel
GLENN S. GREENE
Senior Trial Attorney
U.S. Department of Justice, Civil Division
Constitutional and Specialized Tort Litigation
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044
(202) 616-4143 (phone)
(202) 616-4314 (fax)
Glenn.Greene@usdoj.gov
ATTORNEYS FOR THE UNITED STATES AND
GEORGE W. BUSH, RICHARD B. CHENEY,
CONDOLEEZZA RICE, COLIN POWELL,
DONALD RUMSFELD, AND PAUL WOLFOWITZ

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| SUNDUS SHAKER SALEH, et al., | ) | No. 3:13-cv-01124 JST |
| | ) | |
| Plaintiffs, | ) | **THE UNITED STATES'** |
| | ) | **MOTION TO DISMISS** |
| v. | ) | |
| | ) | **DATE: December 12, 2013** |
| GEORGE W. BUSH, et al., | ) | **TIME: 2:00 PM** |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

PLEASE TAKE NOTICE that on December 12, 2013, at 2:00 pm, or as soon thereafter as counsel may be heard, Defendant the United States, which has substituted itself for named defendants former President George W. Bush, former Vice-President Richard B. Cheney, former Secretary of Defense Donald H. Rumsfeld, former National Security Advisor Condoleezza Rice, former Secretary of State Colin Powell, and former Deputy Secretary of Defense Paul Wolfowitz, will present its motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) before the

Honorable Jon S. Tigar, United States District Court Judge for the Northern District of California.

The United States' motion seeks dismissal of all of the claims asserted in the Complaint filed by Plaintiff Sundus Shaker Saleh.

Dated: August 20, 2013

Respectfully Submitted,

STUART F. DELERY
Deputy Assistant Attorney General

RUPA BHATTACHARYYA
Director, Torts Branch

MARY HAMPTON MASON
Senior Trial Counsel

*/s/Glenn S. Greene*
GLENN S. GREENE
Senior Trial Attorney
U.S. Department of Justice, Civil Division
Constitutional and Specialized Tort Litigation
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044
(202) 616-4143 (phone)
(202) 616-4314 (fax)
Glenn.Greene@usdoj.gov

ATTORNEYS FOR THE UNITED STATES AND GEORGE W. BUSH, RICHARD B. CHENEY, CONDOLEEZZA RICE, COLIN POWELL, DONALD RUMSFELD, AND PAUL WOLFOWITZ

STUART F. DELERY
Deputy Assistant Attorney General
RUPA BHATTACHARYYA
Director, Torts Branch, Civil Division
MARY HAMPTON MASON
Senior Trial Counsel
GLENN S. GREENE
Senior Trial Attorney
U.S. Department of Justice, Civil Division
Constitutional and Specialized Tort Litigation
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044
(202) 616-4143 (phone)
(202) 616-4314 (fax)
Glenn.Greene@usdoj.gov
ATTORNEYS FOR THE UNITED STATES AND
GEORGE W. BUSH, RICHARD B. CHENEY,
CONDOLEEZZA RICE, COLIN POWELL,
DONALD RUMSFELD, AND PAUL WOLFOWITZ

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| SUNDUS SHAKER SALEH, et al., | ) | No. 3:13-cv-01124 JST |
| | ) | |
| Plaintiffs, | ) | **BRIEF IN SUPPORT OF** |
| | ) | **THE UNITED STATES'** |
| v. | ) | **MOTION TO DISMISS** |
| | ) | |
| GEORGE W. BUSH, et al., | ) | **DATE:** |
| | ) | **TIME:** |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ v

FACTUAL ALLEGATIONS ............................................................................................... 1

SUMMARY OF ARGUMENT ............................................................................................ 2

LEGAL FRAMEWORK .................................................................................................... 3

   I.   THE UNITED STATES MUST BE SUSTITUTED AS THE PROPER DEFENDANT
       FOR COUNTS I AND II ............................................................................................ 4

  II.  THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THE CLAIMS
       ASSERTED IN COUNTS I AND II BECAUSE THEY RAISE NON-JUSTICIABLE
       POLITICAL QUESTIONS ........................................................................................ 7

 III.    COUNTS I AND II MUST BE DISMISSED BECAUSE THIS COURT LACKS
       SUBJECT MATTER JURISDICTION UNDER THE FTCA ...................................... 13

     A.   Plaintiff failed to exhaust her administrative remedies before filing suit ................... 13

     B.   The United States has not waived its sovereign immunity for suits based upon
          customary international law .................................................................................... 14

     C.   Plaintiff's claims are barred by the foreign country exception to the FTCA. ............ 15

 IV. EVEN IF THE COURT HAS SUBJECT MATTER JURISDICTION OVER COUNTS I
       AND II, VENUE IS IMPROPER IN THIS DISTRICT ................................................ 16

CONCLUSION ................................................................................................................ 16

# TABLE OF AUTHORITIES

Cases

*Agredano v. U.S. Customs Service*,
   223 Fed.Appx. 558 (9th Cir. 2007) ....................................................................... 18

*Alperin v. Vatican Bank*,
   410 F.3d 532 (9th Cir. 2005) ................................................................................... 8

*Alvarez-Machain v. United States*,
   331 F.3d 604 (9th Cir. 2003), *rev'd on other grounds*, 542 U.S. 692 (2004) ...................... 14, 15

*Ameur v. Gates* ,
   No. 1:12-cv-823 (GBL/TRJ), 2013 WL 3120205 (E.D. Va. June 20, 2013) ...................... 15, 17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .............................................................................................. 1

*Baker v. Carr*,
   369 U.S. 186 (1962) ......................................................................................... 7, 8

*Balistreri v. Pacifica Police Dept.*,
   901 F.2d 696 (9th Cir.1990) ................................................................................... 3

*Bansal v. Russ*,
   513 F. Supp. 2d 264 (E.D. Pa. 2007 ) .................................................................. 16, 17

*Conservation Force v. Salazar*,
   646 F.3d 1240 (9th Cir.2011), *cert. denied, Blasquez v. Salazar*,  132 S. Ct. 1762 (2012) ........ 3

*Cook v. City of Pomona*,
   70 F.3d 1277 (9th Cir. 1995) ................................................................................... 3

*Corrie v. Caterpillar, Inc.*,
   503 F.3d 974 (9th Cir. 2007) ................................................................................... 8

*Delta Savings Bank v. United States*,
   265 F.3d 1017 (9th Cir. 2001) ............................................................................... 17

*El-Shifa Pharm. Indus. Co. v. United States*,
   607 F.3d 836 (D.C. Cir. 2010).............................................................................. 7, 9

*FDIC v. Meyer*,
   510 U.S. 471 (1994) ........................................................................................... 17

*Ferry v. Ackerman*,
  444 U.S. 193 (1979) ............................................................................................ 4, 6

*Flast v. Cohen*,
  392 U.S. 83 (1968) .................................................................................................. 8

*Gilligan v. Morgan*,
  413 U.S. 1 (1973) .................................................................................................... 9

*Gutierrez de Martinez v. Lamagno*,
  515 U.S. 417 (1995) .............................................................................................. 14

*Haig v. Agee*,
  453 U.S. 280 (1981) .............................................................................................. 10

*Hamad v. Gates*,
  No. C10-591 MJP, 2011 WL 61304139  (W.D. Wash. Dec. 8, 2011) ................................ 15, 17

*Hamdi v. Rumsfeld*,
  542 U.S. 507 (2004) ................................................................................................ 5

*Jackson v. Tate*,
  648 F.3d 729 (9th Cir. 2011) .............................................................................. 13, 14

*Japan Whaling Ass'n v. Am. Cetacean Soc'y*,
  478 U.S. 221 (1986) ................................................................................................ 7

*Kashin v. Kent*,
  457 F.3d 1033 (9th Cir. 2006) ............................................................................... 14

*Marbury v. Madison*,
  5 U.S. (1 Cranch) 137 (1803) .................................................................................. 7

*McGuire v. United States*,
  550 F.3d 903 (9th Cir. 2008) ................................................................................. 17

*McNeil v. United States*,
  508 U.S. 106 (1993) .............................................................................................. 16

*McNutt v. General Motors Acceptance Corp.*,
  298 U.S. 178 (1936) ................................................................................................ 3

*Mingtai Fire& Marine Ins. Co. v. United Parcel Serv.*,
  177 F.3d 1142 (9th Cir. 1999) ............................................................................... 10

*Nixon v. Fitzgerald,*
    457 U.S. 731 (1982) ............................................................................. 4, 5, 6

*Nixon v. United States,*
    506 U.S. 224 (1993) ..................................................................................... 8

*No GWEN Alliance of Lane County, Inc. v. Aldridge,*
    855 F.2d 1380 (9th Cir.1988) ................................................................... 8, 9

*North Dakota v. United States,*
    495 U.S. 423 (1990) ..................................................................................... 5

*Oetjen v. Cent. Leather Co.,*
    246 U.S. 297 (1918) ................................................................................... 10

*Osborn v. Haley,*
    549 U.S. 225 (2007) ................................................................................... 14

*Pierson v. Ray,*
    386 U.S. 547 (1967) ..................................................................................... 4

*Schlesinger v. Reservists Comm. to Stop the War,*
    418 U.S. 208 (1974) ..................................................................................... 8

*Sobitan v. Glud,*
    589 F.3d 379 (7th Cir. 2009) ............................................................... 15, 17

*Sosa v. Alvarez-Machain,*
    542 U.S. 692 (2004) ........................................................................... passim

*Tosco Corporation v. Communities for a Better Environment,*
    236 F.3d 495 (9th Cir. 2001), *abrogated by Hertz Corp. v. Friend*, 559 U.S. 77 (2010) ........... 3

*United States v. Mitchell,*
    445 U.S. 535 (1980) ................................................................................... 17

*United States v. Smith,*
    499 U.S. 160 (1991) ................................................................................... 13

*United States v. Spelar,*
    338 U.S. 217 (1949) ................................................................................... 18

*Vacek v. U.S. Postal Service,*
    447 F.3d 1248 (9th Cir. 2006) ................................................................... 16

*Waterman S.S. Corp.*,
   333 U.S. 103 (1948) ................................................................. 10

*Zivotofsky v. Clinton*,
   132 S. Ct. 1421 (2012)............................................................. 7

Statutes

28 U.S.C. § 1346 ......................................................................... 17

28 U.S.C. § 1350 ......................................................................... 12

28 U.S.C. § 1391 ......................................................................... 18

28 U.S.C. § 1402 ......................................................................... 18

28 U.S.C. § 1406 ......................................................................... 18

28 U.S.C. §§ 2671, 2674 .............................................................. 13

28 U.S.C. § 2675 ......................................................................... 16

28 U.S.C. § 2679 ................................................................. 13, 14, 16

28 U.S.C. § 2680(k) ..................................................................... 17

50 U.S.C. § 1541 ......................................................................... 11

Authorization for Use of Military Force Against Iraq Resolution of 2002,
   Pub.L. 107–243, 116 Stat. 1498 ........................................... 10, 11

U.S. Const. art II, § 2 ............................................................... 5, 6, 9

U.S. Const. art. I, § 8................................................................. 5, 9

U.S. Const. art. VI, cl. 2 .............................................................. 15

Rules

Fed. R. Civ. P. 12............................................................................ 3

FACTUAL ALLEGATIONS

The plaintiff in this lawsuit seeks to litigate the United States' decision to go to war with the nation of Iraq in 2003.  Sundus Shaker Saleh, a citizen of Iraq who allegedly lived in that country at the inception of the Iraq War in 2003 but now resides in Amman, Jordan, has sued former President George W. Bush, former Vice-President Richard B. Cheney, former Secretary of Defense Donald H. Rumsfeld, former National Security Advisor Condoleezza Rice, former Secretary of State Colin Powell, and former Deputy Secretary of Defense Paul Wolfowitz, for damages she allegedly suffered as a result of the Iraq War.

Plaintiff Saleh alleges that Bush, Cheney, Rumsfeld, Rice, Powell, and Wolfowitz, conspired to and did use the terrorist attacks of September 11, 2001, as a pretext for taking the United States to war against Iraq.[1]  Complaint ("Compl.") ¶¶ 1-2.  Saleh claims that Cheney, Rumsfeld, and Wolfowitz advocated for the military overthrow of Saddam Hussein and the invasion of Iraq during the presidency of William Clinton.  *Id.* ¶¶ 26-30.  According to Saleh, once George Bush was elected President, and after the September 11 attacks, defendants Bush, Cheney, Wolfowitz, and Rumsfeld conspired to use those attacks as a justification for going to war with Iraq.  *Id.* ¶¶ 31-45.  Saleh alleges that the named individuals planned to "fix" the intelligence related to the invasion of Iraq and to scare the American people into supporting the Iraq War.  *Id.* ¶¶ 46-49.  This plan, which also allegedly involved actions by defendants Rice and Powell, included providing the public with purportedly false information about Iraq's nuclear capabilities and its ties to the al-Qaeda terrorist organization.  *Id.* ¶¶ 50-68.

---

[1] For purposes of this Motion to Dismiss, only Plaintiff's well-pled allegations of fact are presumed to be true.  Conclusory allegations of fact and allegations which assert legal conclusions are not entitled to a presumption of truth.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-82 (2009).

In her Complaint, Saleh alleges that the named individuals conspired to wage (Count I), and did in fact wage (Count II) a war of aggression against Iraq in violation of international law. *Id.* ¶¶ 91-109.  Saleh further alleges that the individuals' actions violated the United Nations Charter, and the Kellogg-Briand Pact, a 1928 treaty to which the United States is a signatory.  *Id.* Saleh alleges that she lost her home and property when she was forced to flee from Iraq to Jordan in 2005 because of the Iraq War and the ensuing occupation.  *Id.* ¶¶ 77-86.  Saleh seeks to bring her suit as a putative class action for herself and on behalf of "innocent Iraqi civilians who, through no fault of their own, suffered damage as a but-for and proximate cause of [the] Defendants' international legal torts."  *Id.* ¶ 87.[2]

## SUMMARY OF ARGUMENT

Counts I and II of Plaintiff Saleh's Complaint should be dismissed in their entirety because the Court lacks subject matter jurisdiction over the claims asserted therein.  This is true for two independent reasons:

- First, Plaintiff's claims raise non-justiciable political questions that would require the Court to make determinations that are properly committed to the political branches of the government.

- Second, because Plaintiff's claims are based upon the alleged wrongful conduct of government employees acting within the scope of their employment, the Westfall Act requires that the United States be substituted in place of the named individuals and the

---

[2] This matter has not been certified as a class action.  Any consideration of certification is premature at this point because the United States' Motion to Dismiss may resolve this case in its entirety, or, if not, may limit further proceedings in ways that might affect the propriety of class certification.  Moreover, it is not at all clear that Plaintiff has alleged facts sufficient to satisfy the standing requirement of Article III, given the attenuated causal connection between her claimed injuries and the alleged actions of the named individuals.   *See* Compl. ¶¶ 77-85 (identifying Kurdish Army and Shia Muslims as those who allegedly forced Plaintiff and her family to leave two homes in Iraq and flee to Jordan).

claims brought as Federal Tort Claims Act ("FTCA") claims against the United States. Once the United States is substituted for the named individuals the resulting claims must be dismissed because:

- o   Plaintiff failed to exhaust her administrative remedies, which is a jurisdictional prerequisite, prior to filing her suit;

- o   The United States has not waived its sovereign immunity for claims based upon customary international law; and

- o   The claims are barred by the FTCA's foreign country exception.

Finally, even if the Court has subject matter jurisdiction over Plaintiff's claims, venue is improper in this district.

## LEGAL FRAMEWORK

A federal district court is a court of limited jurisdiction.  *Cook v. City of Pomona*, 70 F.3d 1277 (9th Cir. 1995) ((citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 182-183 (1936)).  Under Federal Rule of Civil Procedure 12(b)(1), if a district court determines that it lacks subject matter jurisdiction over the claims raised in a complaint, the complaint must be dismissed.  Fed. R. Civ. P. 12(b)(1); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action.").  Plaintiff Saleh, as the party seeking to invoke the court's jurisdiction, bears the burden of establishing subject matter jurisdiction.  *Tosco Corp. v. Communities for a Better Environment*, 236 F.3d 495, 499 (9th Cir. 2001), *abrogated on other grounds by Hertz Corp. v. Friend*, 559 U.S. 77 (2010).

A motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted challenges the legal sufficiency of the claims stated in the complaint.  Fed. R. Civ. Proc. 12(b)(6).  Dismissal of Plaintiff's Complaint pursuant to Rule 12(b)(6) is appropriate if there is a "'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'"  *Conservation Force v.*

*Salazar*, 646 F.3d 1240, 1242 (9th Cir.2011), *cert. denied, Blasquez v. Salazar,* 132 S. Ct. 1762 (2012) (quoting *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1990)).

I.     THE UNITED STATES MUST BE SUSTITUTED AS THE PROPER DEFENDANT FOR COUNTS I AND II

In Counts I and II, Plaintiff invokes the jurisdiction of the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350, to assert tort claims based upon the named individuals' alleged conspiracy to commit, and actual commission of the "crime of aggression." Compl. ¶¶ 95-96. Plaintiff asserts that the crime of aggression and conspiracy to commit the crime of aggression are "violation(s) of international law that rest[] "on a norm of international character accepted by the civilized world and defined with a specificity comparable to the features of the 18th-century paradigms [the United States Supreme Court has] recognized." *Id.* ¶¶ 96, 106 (quoting *Sosa v. Alvarez-Machain*, 542 U.S. 692, 725 (2004)). However, because Counts I and II assert claims based upon the alleged wrongful conduct of government employees acting within the scope of their government employment, both counts are barred by the Federal Employees Liability Reform and Tort Compensation Act of 1988, Pub. L. No. 100-694, 102 Stat. 4563 (codified in part at 28 U.S.C. §§ 2671, 2674, 2679) (the "Westfall Act"). The Westfall Act makes clear that the exclusive remedy for a claim based upon the alleged "negligent or wrongful act or omission" of a government employee acting within the scope of his or her employment is a suit against the United States under the Federal Tort Claims Act ("FTCA"). 28 U.S.C. § 2679(b)(1) . The Act expressly precludes any other "civil action or proceeding for money damages" arising out of the same subject matter against the employee. 28 U.S.C. § 2679(b)(1). The exclusivity of the FTCA remedy is applicable even if a plaintiff cannot recover against the United States under the FTCA. *See United States v. Smith*, 499 U.S. 160, 166 (1991) ("Congress recognized that the required

substitution of the United States as the defendant in tort suits filed against Government employees would sometimes foreclose a tort plaintiff's recovery altogether.").

Upon certification by the Attorney General that the defendant individual employee acted within the scope of his employment, the United States is substituted in the employee's place and becomes the sole defendant by operation of law.  28 U.S.C. § 2679(d)(1); *Jackson v. Tate*, 648 F.3d 729, 735 (9th Cir. 2011).[5]  In this case, a designee of the Attorney General has certified that the named individuals – Bush, Cheney, Rumsfeld, Powell, Rice and Wolfowitz – each acted within the scope of his or her employment with respect to the allegations in Plaintiff Saleh's Complaint.  *See* United States' Notice of Substitution, Ex. 1 (certification).  This certification is "prima facie evidence" that the named individuals indeed acted within the scope of their employment.  *Jackson*, 648 F.3d at 735 ("[I]f the Attorney General makes such a certification, then 'the United States must be substituted as the defendant.'") (*quoting Osborn v. Haley*, 549 U.S. 225, 240-41 (2007)).[6]  The effect of this substitution is that each of the named individuals is absolutely immune from suit for the alleged tort(s) that gave rise to Plaintiff Saleh's Complaint. *See* 28 U.S.C. § 2679(b)(1) ("civil action[s] or proceeding[s] . . . against the employee or the employee's estate [are] precluded").

---

[5] Certification of scope of employment under the Westfall Act is not a discretionary action by the Department of Justice.  Federal employees who are sued for their actions have a right to receive a scope of employment certification whenever their alleged conduct satisfies the requirements of the Act.  If a scope certification is not provided, federal employees may petition the court to compel certification.  28 U.S.C. § 2679(d)(3); *see also Gutierrez de Martinez v. Lamagno,* 515 U.S. 417, 431 (1995) (finding that "the Act specifically allows employees whose certification requests have been denied by the Attorney General, to contest the denial in court").

[6] The party seeking review of the Attorney General's decision to grant scope of employment certification, "bears the burden of presenting evidence and disproving [that] decision . . . by a preponderance of the evidence."  *Jackson*, 648 F.3d at 735 (*quoting Kashin v. Kent*, 457 F.3d 1033, 1036 (9th Cir. 2006) (internal quotation marks omitted)).

There are only two exceptions to the exclusive remedy mandated by the Westfall Act: claims brought for 1)"a violation of the Constitution" or 2) "a violation of a statute of the United States." 28 U.S.C. § 2679(b)(2).  Neither exception is applicable here.  Plaintiff does not allege any constitutional violation.  And the ATS itself cannot be "violated" because it is not a statute that creates substantive rights.  As the Supreme Court recognized in *Sosa v. Alvarez-Machain*, "the ATS is a jurisdictional statute creating no new causes of action." 542 U.S. at 724.  It merely affords the jurisdictional basis for the assertion of rights conferred elsewhere, namely by the law of nations or a U.S. treaty.  *Id.*  The Ninth Circuit's decision in *Alvarez-Machain v. United States*, 331 F.3d 604, 631 (9th Cir. 2003), *rev'd on other grounds*, 542 U.S. 692 (2004), is directly on point.  The plaintiff in *Alvarez-Machain* invoked the jurisdiction of the ATS to assert claims based on customary international law.  The Ninth Circuit expressly held that the United States is the proper defendant for such claims.  *See id.*  The Ninth Circuit affirmed the district court's determination that an ATS action based upon customary international law did not fall within the exception to the Westfall Act for suits brought for a violation of a statute of the United States, and that "a claim under the AT[S] is based on a violation of international law, not of the AT[S] itself."  *Id*; *see also Sosa*, 542 U.S. at 713-14 (holding that the ATS is a jurisdictional statute only and creates no new causes of action).  Here, Plaintiff Saleh, like the plaintiff in *Alvarez Machain*, invokes the ATS to assert claims based upon customary international law.  Compl. ¶¶ 5, 91-109.  As the Ninth Circuit recognized in *Alvarez-Machain*, the United States is the proper defendant for those claims.

To the extent that Plaintiff Saleh relies upon the Kellogg Briand Pact as the basis for the claims brought in Counts I and II against the Defendants, *see* Compl. ¶¶ 94, 103, those claims are still barred by the Westfall Act.  While treaties such as the Kellogg Briand Pact may be part of

the "law of the land," Compl. ¶¶ 94, 103, they are not part of the Constitution.[7]  Nor are treaties

federal statutes.[8]

In sum, upon substitution, the United States is now, by operation of law, the sole

defendant in this matter.[9]

II.     THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THE CLAIMS
        ASSERTED IN COUNTS I AND II BECAUSE THEY RAISE NON-JUSTICIABLE
        POLITICAL QUESTIONS

The claims asserted in Counts I and II of Plaintiff Saleh's Complaint raise non-justiciable

political questions, the resolution of which would require the Court to make determinations that

are properly committed to the political branches of the government.  As such, the Court lacks

subject matter jurisdiction to consider the claims.

---

[7]  The Constitution expressly recognizes a distinction between federal constitutional, statutory, and treaty provisions.  The Supremacy Clause states: "This Constitution, and the Laws of the United States which shall be made in pursuance thereof; and all Treaties made, or shall be made, under the Authority of the United States, shall be the Supreme Law of the Land . . ." U.S. Const. art. VI, cl. 2 (emphasis added).

[8]  As the Seventh Circuit has observed, "every court to consider the issue has determined that the Westfall Act's exemption for statutory claims does not include claims brought pursuant to a treaty."  *Sobitan v. Glud*, 589 F.3d 379, 386 (7th Cir. 2009); *see also Ameur v. Gates*, No. 1:12-cv-823 (GBL/TRJ), 2013 WL 3120205, at * 8 (E.D. Va. June 20, 2013)  (finding Westfall Act exception inapplicable to claims brought pursuant to a treaty because "[t]reaties are not statutes, as they do not invoke the bicameral legislative process required for what is commonly understood to be a statute"); *Hamad v. Gates*, No. C10-591 MJP, 2011 WL 6130413, at *9 (W.D. Wash. Dec. 8, 2011) (finding that claims under the Geneva Conventions and customary international law did not fall under Westfall exception); *Bansal v. Russ*, 513 F. Supp. 2d 264, 280 (E.D. Pa. 2007) (claim under Vienna Convention on Consular Relations does not fall under Westfall Act exception).

[9]  Because the United States has substituted itself by operation of law as the only proper defendant to this suit, the named individuals are not required to respond to the complaint in their individual capacities.  The United States notes, however, that each of those individuals would have any number of personal defenses that could be raised, including but not limited to absolute immunity for the President, qualified or other common law immunities, personal jurisdiction, and the like.

The roots of the political question doctrine extend as far back as *Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803), in which Chief Justice Marshall observed that "[q]uestions, in their nature political, or which are, by the constitution and laws, submitted to the executive, can never be made in this court." *Id.* at 170. The "political question doctrine" is "primarily a function of the separation of powers." *Baker v. Carr*, 369 U.S. 186, 210-11 (1962). It is the "relationship between the judiciary and the coordinate branches of Federal Government" that gives rise to a political question. *Id.* at 210. Such questions arise in "controversies which revolve around policy choices and value determinations" that are constitutionally committed to the Executive or Legislative Branches of our system of government. *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 (1986).

To evaluate whether a case raises political questions, a court must first "identify with precision" the issues it is being asked to decide. *Zivotofsky v. Clinton*, 132 S. Ct. 1421, 1434 (2012) (Sotomayor, J., concurring). "[T]he presence of a political question . . . turns not on the nature of the government conduct under review but more precisely on the question the plaintiff raises about the challenged action." *El-Shifa Pharm. Indus. Co. v. United States*, 607 F.3d 836, 842 (D.C. Cir. 2010) (en banc). This requires "a discriminating analysis of the particular question posed, in terms of the history of its management by the political branches, of its susceptibility to judicial handling in the light of its nature and posture in the specific case, and of the possible consequences of judicial action." *Baker*, 369 U.S. at 211-12.

In *Baker v. Carr*, the Supreme Court identified six independent tests for determining whether courts should defer to the political branches on an issue:

> Prominent on the surface of any case held to involve a political question is found [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without

an initial policy determination of a kind clearly for nonjudicial discretion; or [4]

the impossibility of a court's undertaking independent resolution without

expressing lack of the respect due coordinate branches of government; or [5] an

unusual need for unquestioning adherence to a political decision already made; or

[6] the potentiality of embarrassment from multifarious pronouncements by

various departments on one question.

369 U.S. 185, 217 (1962).  A nonjusticiable political question is present if *any one* of these

factors is "inextricable from the case."  *Id.*  However, the Ninth Circuit has observed that

these tests are more discrete in theory than in practice, with the analyses often

collapsing into one another. . . This overlap is not surprising given the common

underlying inquiry of whether the very nature of the question is one that can

properly be decided by the judiciary.

*Alperin v. Vatican Bank*, 410 F.3d 532, 544 (9th Cir. 2005) (citing *Nixon v. United States*, 506

U.S. 224, 228-29 (1993)).

The Ninth Circuit has held that where a case presents a political question, courts lack

subject matter jurisdiction to decide the question.  *Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 982

(9th Cir. 2007).  This is in accord with the Supreme Court's recognition that disputes involving

political questions lie outside the Article III jurisdiction of federal courts.  *Schlesinger v.

Reservists Comm. to Stop the War*, 418 U.S. 208, 215 (1974) ("[T]he concept of justiciability,

which expresses the jurisdictional limitations imposed upon federal courts by the 'case or

controversy' requirement of Art. III, embodies ... the political question doctrine [ ].") (citing

*Flast v. Cohen*, 392 U.S. 83, 95 (1968)); *see also No GWEN Alliance of Lane County, Inc. v.

Aldridge*, 855 F.2d 1380, 1382 (9th Cir.1988) ( "[T]he presence of a political question precludes

a federal court, under [A]rticle III of the Constitution, from hearing or deciding the case

presented.").

When the *Baker* formulation is applied to the claims presented by Plaintiff Saleh it is clear that the claims are non-justiciable under the political question doctrine.  The very first *Baker* factor – whether there is a "textually demonstrable constitutional commitment of the issue to a coordinate political department" – proves as much.  It is beyond question that there is a "textually demonstrable constitutional commitment of the issues" of war powers and national defense to the Executive and Legislative branches.  The Constitution identifies the President as "Commander in Chief of the Army and Navy of the United States, and of the Militia of the several states, when called into the actual Service of the United States."  U.S. Const. art II, § 2. The Constitution gives Congress the powers to "provide for the common Defence and general Welfare of the United States . . . [t]o "declare War . . . [t]o raise and support Armies . . . [t]o provide and maintain a Navy . . . to make Rules for the Government and Regulation of the land and naval forces . . . [and] provide for calling forth the Militia to . . . repel Invasions."  *Id.* art.I, §8.  Clearly the question of whether the United States should have gone to war with Iraq in 2003, which is the crux of Plaintiff's Complaint, *see* Compl. ¶¶ 91-109, is wholly encompassed by this "textually demonstrable commitment."  *See El-Shifa*, 607 F.3d at 845 ("Whether the circumstances warrant a military attack on a foreign target is a 'substantive political judgment[] entrusted expressly to the coordinate branches of government.'") (quoting *Gilligan v. Morgan*, 413 U.S. 1, 11 (1973)).

Moreover, the decision to go to war with a foreign nation is inherently entangled with the conduct of the foreign relations of the United States government.  Like war powers and national defense, matters of foreign relations are textually committed to the political branches.  Article II of the Constitution states that the President "shall have Power, by and with the Advice and Consent of the Senate, to make Treaties . . . [and] appoint Ambassadors," and also "shall receive Ambassadors and other public Ministers."  *Id.* art. II, §§ 2-3.  Article I gives Congress the power to "regulate Commerce with foreign Nations" and "To define and punish Piracies and Felonies

committed on the high Seas, and Offences against the Law of Nations." *Id.* art. I, § 8.  As the Supreme Court has recognized, "[t]he conduct of the foreign relations of our government is committed by the Constitution to the executive and legislative – 'the political' – departments of the government, and the propriety of what may be done in the exercise of this political power is not subject to judicial inquiry or decision." *Oetjen v. Cent. Leather Co.*, 246 U.S. 297, 302 (1918) (citations omitted); *see also See, e.g.*, *Haig v. Agee*, 453 U.S. 280, 292 (1981) ("Matters intimately related to foreign policy and national security are rarely proper subjects for judicial intervention.") (citations omitted); *Chicago & So. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 111 (1948) ("[T]he very nature of executive decisions as to foreign policy is political, not judicial. Such decisions are wholly confided by our Constitution to the political departments of the government, Executive and Legislative."); *Mingtai Fire & Marine Ins. Co. v. United Parcel Serv.*, 177 F.3d 1142, 1144 (9th Cir. 1999).

Plaintiff Saleh's claims are also inextricably tied to the fourth *Baker* factor – the impossibility of the court undertaking independent resolution without expressing lack of the respect due coordinate branches of government;.  The question of whether the United States should have gone to war with Iraq is not only a decision that was committed by the Constitution to the political branches, it is a decision those branches have already made.  In October 2002, the United States Congress passed a joint resolution authorizing the use of military force against Iraq.  *See* Authorization for Use of Military Force Against Iraq Resolution of 2002, Pub.L. 107–243, 116 Stat. 1498, enacted October 16, 2002, H.J.Res. 114.  The Resolution cites a long list of factors as justification for the use of force against Iraq, beginning with the Iraq war against and illegal occupation of Kuwait in 1990 and continuing through various subsequent United Nations Security Council resolutions regarding Iraq.  *Id.*  The Court could not consider Plaintiff Saleh's claims without questioning Congress' judgment with respect to each of these factors –

determining whether the particular judgment was correct and if not, the effect of the incorrect judgment(s) on the validity of the Authorization as a whole.

The Court would also have to question the Resolution's recognition that "the President has authority under the Constitution to take action in order to deter and prevent acts of international terrorism against the United States" and that "it is in the national security interests of the United States to restore international peace and security to the Persian Gulf region." *Id.* The Court would have to consider the authorization given to the President "to use the Armed Forces of the United States as he determines to be necessary and appropriate in order to – (1) defend the national security of the United States against the continuing threat posed by Iraq; and (2) enforce all relevant United Nations Security Council resolutions regarding Iraq." *Id.* The Court would have to determine whether the Resolution, as Congress declared, "constitute[d] specific statutory authorization within the meaning of section 5(b) of the War Powers Resolution."[10] *Id.* And the Court would have to examine Former President Bush's subsequent policy determination that the use of military force against Iraq was "necessary and appropriate."

Even as Plaintiff construes the question at issue, addressing the purported crime of aggression involves answering questions barred by the political question doctrine, including

- Whether the authorization of the United Nations Security Council was needed before the United States could go to war against Iraq, Compl. ¶¶ 70-71;

---

[10] The War Powers Resolution of 1973 is a federal law intended to:
fulfill the intent of the framers of the Constitution of the United States and insure that the collective judgment of both the Congress and the President will apply to the introduction of United States Armed Forces into hostilities, or into situations where imminent involvement in hostilities is clearly indicated by the circumstances, and to the continued use of such forces in hostilities or in such situations.

50 U.S.C. § 1541(a); *see also* 50 U.S.C. §§ 1541-48.

- Whether there was an "imminent humanitarian disaster or event" in Iraq that required the intervention of a foreign power, *id.* ¶ 72;

- Whether Iraq posed an "imminent military threat" that required the United States to act in self-defense, *id.* ¶ 73; and

- Whether the invasion of Iraq was reasonably related or proportioned to the threat posed, *id.* ¶ 74.

There can be little doubt that if the Court were to undertake the extensive review described above, which would be necessary for the resolution of Plaintiff Saleh's claims, it would constitute a clear lack of respect for the role of the political branches in determining the circumstances under which this nation went to war against Iraq in 2003.  In addition, there is great potential for embarrassment – the sixth *Baker* factor – if a federal court were to determine ten years after the fact that the Iraq War was undertaken by the United States without legal justification.

Notwithstanding the express command of the Constitution, Plaintiff would have this Court substitute its judgment on the proper exercise of war powers and the conduct of foreign affairs for the judgment of the political branches to which those matters have been entrusted. The political question doctrine compels the rejection of this invitation and thus bars the Court's consideration of Plaintiff's claims.[11]

## III.  COUNTS I AND II MUST BE DISMISSED BECAUSE THIS COURT LACKS SUBJECT MATTER JURISDICTION UNDER THE FTCA

A.   Plaintiff failed to exhaust her administrative remedies before filing suit.

When the United States is substituted for an individual federal defendant, the resulting claim is fully "subject to the limitations and exceptions applicable to" FTCA claims.  28 U.S.C. §

---

[11] The political question doctrine would bar litigation of this case whether the United States was a defendant or whether the named individuals were defendants.

2679(d)(4).  One of those limitations is the requirement that a plaintiff must exhaust all administrative remedies before pursuing an FTCA claim against the United States.  Specifically, 28 U.S.C. § 2675(a) states that "[a]n action shall not be instituted upon a claim against the United States for money damages . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing" or the agency "fail[s] . . . to make final disposition of a claim within six months after it is filed . . ."  *See also McNeil v. United States*, 508 U.S. 106, 112 (1993) ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies.").  This exhaustion requirement is jurisdictional   28 U.S.C. § 2675(a); *see Vacek v. U.S. Postal Service*, 447 F.3d 1248, 1250 (9th Cir. 2006) ("We have repeatedly held that the exhaustion requirement is jurisdictional in nature and must be interpreted strictly . . . particularly [] since the [FTCA] waives sovereign immunity [and] [a]ny such waiver must be strictly construed in favor of the United States.") (citations omitted).  Since Plaintiff offers no factual allegations which establish that she has satisfied the exhaustion requirement, the Court lacks subject matter jurisdiction over her FTCA claims.  *See* 28 U.S.C. § 2675(a); *McNeil*, 508 U.S. at 112; *Vacek*, 447 F.3d at 1250.

   B. The United States has not waived its sovereign immunity for suits based upon customary international law.

   The United States, as a sovereign, is immune from suit except to the extent it waives its immunity.  *See United States v. Mitchell*, 445 U.S. 535, 538 (1980*)*; *McGuire v. United States*, 550 F.3d 903, 910 (9th Cir. 2008).  Such a waiver must be "unequivocally expressed" and "cannot be implied." *Mitchell*, 445 U.S. at 538 (citation and quotation omitted).  Through the FTCA, as amended by the Westfall Act, the United States has waived its immunity for tort claims arising from the negligent or wrongful acts or omissions of federal employees that occurred within the scope of their employment. See 28 U.S.C. § 1346(b)(1).  This waiver,

however, is limited to circumstances where the United States, if a private person, would be liable "in accordance with the law of the place" where the act or omission occurred.  *Id.*  Courts have repeatedly held that "the law of the place" refers to state law only.  *See, e.g.*, *FDIC v. Meyer*, 510 U.S. 471, 478 (1994) ("[W]e have consistently held that § 1346(b)'s reference to the "law of the place" means law of the State—the source of substantive liability under the FTCA) (citing cases); *Delta Savings Bank v. United States*, 265 F.3d 1017, 1024-25 (9th Cir. 2001) (barring FTCA claim brought under federal law because FTCA action must be based on violation of state law).  As such, an FTCA claim cannot be based on alleged violations of customary international law or international treaties.  *See Sobitan*, 589 F.3d at 386; *Ameur*, 2013 WL 3120205, at * 8; *Hamad*, 2011 WL 6130413, at *9; *Bansal*, 513 F. Supp. 2d at 280.  Thus, Plaintiff's claims for alleged violations of customary international law are barred by sovereign immunity.

  C.  Plaintiff's claims are barred by the foreign country exception to the FTCA.

  As stated above, the waiver of sovereign immunity embodied by the FTCA is limited to circumstances where the United States, if a private person, would be liable "in accordance with the law of the place" where the act or omission occurred.  28 U.S.C. § 1346(b)(1).  The FTCA explicitly excludes from its coverage "[a]ny claim arising in a foreign country."  28 U.S.C. § 2680(k).  Claims arising in foreign countries are exempted from the FTCA because Congress sought "to avoid application of substantive foreign law" in claims against the United States. *Sosa*, 542 U.S. at 707-08; *see also United States v. Spelar*, 338 U.S. 217, 221 (1949) (noting that Congress "was unwilling to subject the United States to liabilities [under the FTCA] depending upon the laws of a foreign power").  The Supreme Court has held that this "foreign country exception" bars all claims based on any injury suffered in a foreign country, regardless of where the tortious act or omission occurred.  *Sosa*, 542 U.S. at 712; *see also Agredano v. U.S. Customs Service*, 223 Fed.Appx. 558, 559 (9th Cir. 2007).   Since all of the injuries Plaintiff Saleh claims she suffered as a result of the named individuals' conduct occurred outside of the United States

and principally in Iraq, *see* Compl. ¶¶ 77-85, her claims are barred by the FTCA's foreign country exception.  *Sosa*, 542 U.S. at 712.

## IV.   EVEN IF THE COURT HAS SUBJECT MATTER JURISDICTION OVER COUNTS I AND II, VENUE IS IMPROPER IN THIS DISTRICT

As shown above, *see infra* §§ I-III, this Court lacks subject matter jurisdiction over Plaintiff's Saleh's claims against the United States.  Even if this Court determines it has subject matter jurisdiction, the claims must be dismissed because venue does not lie in this Court.  Under 28 U.S.C. § 1402(b), venue for tort claims against the United States lies only in (1) the district where the plaintiff resides, or (2) the district where the complained of acts or omissions occurred.  Plaintiff does not reside in this district.  See Compl. ¶ 8.  Nor did any of the complained of acts or omissions occur in this district.  *Id.* ¶¶ 77-85.  Therefore, venue for Plaintiff's tort claims does not lie in this district and the Court should dismiss the claims.  *See* 28 U.S.C. § 1406(a) (requiring courts to dismiss, or if in the interest of justice transfer, cases laying venue in the wrong district).[16]

## CONCLUSION

For the reasons stated above, Plaintiff Saleh's Complaint should be dismissed in its entirety.

---

[16]  Plaintiff's reliance upon 28 U.S.C. § 1391(b)(3) to establish venue, *see*  Compl. ¶ 6, is misplaced.  Section 1391(b)(3) covers venue generally and applies "[e]xcept as otherwise provided by law."  28 U.S.C. § 1402 specifically addresses venue in cases such as this where the United States is the defendant, and requires that a tort claim against the United States under the FTCA must be brought in the judicial district in which the plaintiff resides or where the act or omission complained of occurred.  *See* 28 U.S.C. § 1402.

Dated: August 20, 2013

Respectfully Submitted,

STUART F. DELERY
Deputy Assistant Attorney General

RUPA BHATTACHARYYA
Director, Torts Branch

MARY HAMPTON MASON
Senior Trial Counsel

*/s/Glenn S. Greene*
GLENN S. GREENE
Senior Trial Attorney
U.S. Department of Justice, Civil Division
Constitutional and Specialized Tort Litigation
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044
(202) 616-4143 (phone)
(202) 616-4314 (fax)
Glenn.Greene@usdoj.gov

ATTORNEYS FOR THE UNITED STATES
AND GEORGE W. BUSH, RICHARD B.
CHENEY, CONDOLEEZZA RICE, COLIN
POWELL, DONALD RUMSFELD, AND
PAUL WOLFOWITZ